IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2025 Session

## EMILY ELIZABETH BUCKNER v. COMPLETE WELLNESS CHIROPRACTIC CENTER, ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-23-376          J. Michael Sharp, Judge**

—————————————————————

**No. E2024-00698-COA-R3-CV**

—————————————————————

D. MICHAEL SWINEY, C.J., concurring.

I write separately to concur with and in support of the majority opinion of the Court. Although both the majority and dissenting opinions are correct that Plaintiff bore the initial burden of establishing compliance with Section 121, I concur with the majority's decision to remand for an evidentiary hearing, given one defense counsel's admission that his client received a signed medical authorization. *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 334 (Tenn. 2020).

I agree that our Supreme Court in *Martin* affirmed a burden-shifting framework, outlined in the following steps: (1) the plaintiff bears the initial burden of proving compliance with Section 121 "by stating in the pleadings and providing 'the documentation specified in subdivision (a)(2),' or of alleging 'extraordinary cause' for any noncompliance"; (2) the defendant challenging the plaintiff's compliance with Section 121 then files a Rule 12.02(6) motion to dismiss, describing how and to the extent to which the plaintiff failed to comply; and (3) "the plaintiff then bears the burden of establishing substantial compliance with Section 121, which includes the burden of demonstrating that the noncompliance did not prejudice the defense." *Id.* at 334-35.

In this case, Plaintiff satisfied her burden as to at least one defendant, Dr. James Martin, who received a signed medical authorization and was not prejudiced by Plaintiff's failure to file a signed copy with the complaint. His counsel acknowledged that his client received a signed medical authorization. In my view, it makes no difference that this evidence came from one of the defendants, despite Plaintiff bearing the initial burden. The evidence of substantial compliance and lack of prejudice was squarely in front of the Trial Court, regardless of which party it came from. Given Dr. Martin's counsel's admission,

other defendants may have received signed medical authorizations as well. It would therefore make no sense to dismiss Plaintiff's case against all other defendants simply because the Trial Court only happened to ask one defendant's attorney, rather than all of them. To do so would be arbitrary.

In agreeing with the majority opinion, I write separately to highlight Tenn. Code Ann. § 29-26-121(b), which provides:

> If a complaint is filed in any court alleging a claim for health care liability, the pleadings shall state whether each party has complied with subsection (a) and shall provide the documentation specified in subdivision (a)(2). The court may require additional evidence of compliance to determine if the provisions of this section have been met. The court has discretion to excuse compliance with this section only for extraordinary cause shown.

(Emphasis added.) The statute clearly provides that trial courts may require additional evidence of compliance to determine if the provisions of Section 121 have been satisfied. The statute does not limit a trial court's power to require this evidence only from the plaintiff. Given Dr. Martin's counsel's admission, it is fitting that we remand for an evidentiary hearing for the Trial Court to consider whether the other defendants received signed medical authorizations, rendering Plaintiff's omission of signed copies from her complaint harmless. In doing so, I believe we are adhering to the purposes of the health care liability statutory scheme, rather than relying on technical deficiencies which do not affect these purposes. To hold otherwise, as suggested by the dissent's analysis, would miss the forest for the trees.

In *Martin*, our Supreme Court reiterated the "distinct but interdependent purposes" of Section 121, which include: ensuring that a plaintiff gives timely notice to a potential defendant of a health care liability claim so that the potential defendant can investigate the merits of the claim and pursue settlement negotiations before litigation, promoting early resolution of claims and judicial economy, and equipping potential defendants with the means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery and access to a plaintiff's medical records. *Martin*, 600 S.W.3d at 331-32. If these purposes are satisfied, technical noncompliance with Section 121(a)(4) and (b) should not prevent a health care liability case from being heard on the merits.

With these purposes in mind, I again emphasize that Tenn. Code Ann. § 29-26-121(b) provides in pertinent part that trial courts "may require additional evidence of compliance to determine if the provisions of this section have been met." This Court in *Foster v. Chiles*, No. E2012-01780-COA-R3-CV, 2013 WL 3306594 (Tenn. Ct. App. June

27, 2013), *rev'd on other grounds*, 467 S.W.3d 911 (Tenn. 2015)[1], explained the contours of this provision as follows:

> The language of section 121(b) providing that "[t]he court may require additional evidence of compliance to determine if the provisions of this section have been met" also supports the conclusion that automatic dismissal with prejudice is not required when a plaintiff neglects to attach proof of service to his or her complaint. In such an instance, the statute contemplates a hearing so the court may consider "additional evidence of compliance" rather than outright dismissal. Under the circumstances presented here, where plaintiffs provided sufficient notice under the statute and inadvertently failed to include—with the second complaint—copies of the notice provided to the defendants, there is no reason why the court should not allow plaintiffs to rectify their oversight by filing the required proof late.
>
> We are mindful of the fact that section 121(b) provides that "the pleadings . . . *shall* provide the documentation specified in subdivision (a)(2)." (Emphasis added.) We are also aware that the word "shall" in a statute often indicates a mandatory requirement, *see Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009), but this interpretation is not always required. The Supreme Court in *Myers,* noted that whether the word "shall" is interpreted to be mandatory or simply directory depends upon "whether the prescribed mode of action is of the essence of the thing to be accomplished." *Myers* [*v. AMISUB (SFH), Inc.*], 382 S.W.3d [300 ] at 309 [(Tenn. 2012)]. Here "the essence of the thing to be accomplished" is the giving of the notice, not the attaching of evidence of same to the complaint. Under these circumstances, we hold that the provision in section 121(b) under discussion, is directory and not mandatory. Thus, the use of the word "shall" in section 121(b) is not inconsistent with our holding that dismissal is not required by the statute for noncompliance.

*Id.* at \*6-7 (emphasis added).

This Court reiterated the point in *Clary v. Miller*, 546 S.W.3d 101 (Tenn. Ct. App. 2017), explaining:

> Our supreme court has concluded that providing pre-suit notice to potential defendants is the "essence" of the statute and, thus, compliance with the pre-suit notice requirement of subsection (a)(1) is mandatory. Nothing short of strict compliance is acceptable. But, in the absence of prejudice to

---

[1] *Foster v. Chiles*, 467 S.W.3d 911, 916 n.4 (Tenn. 2015) ("As Tenn. Code Ann. § 29-26-121(a)(1) requires dismissal of this action, we need not address the Fosters' noncompliance with § 29-26-121(b).").

the opposing party, substantial compliance with other requirements in the statute is enough to avoid dismissal of the complaint.

* * *

The pre-suit notice statute has multiple requirements that "serve related yet ultimately distinct goals." The requirement to provide a copy of the medical authorization with the complaint serves to confirm the content of the document that was given to the potential defendants. *See Travis v. Cookeville Reg'l Med. Ctr.*, No. M2015-01989-COA-R3-CV, 2016 WL 5266554, at *7 (Tenn. Ct. App. Sept. 21, 2016) (observing that counsel's inability to provide a copy of the medical authorization sent to the potential defendants left the court unable to resolve the issue of whether the authorization complied with the statute).

* * *

Consistent with our supreme court precedent, we conclude that the documentation requirement of Tennessee Code Annotated § 29-26-121(b) is not mandatory, and substantial compliance is sufficient.

*Id.* at 106 (emphasis added and certain citations omitted).

Accordingly, the essence of the statute is to provide potential defendants with pre-suit notice and to enable them to access a plaintiff's medical records prior to litigation by providing them with HIPAA-compliant medical authorizations. If a plaintiff does this, then I see no valid reason under the statute why a plaintiff's health care liability claim should be dismissed and not adjudicated on the merits simply because his or her counsel failed to attach copies of the provided HIPAA-compliant medical authorizations to the complaint. If the potential defendants actually received the HIPAA-compliant medical authorizations, they are not prejudiced by unsigned copies attached to the complaint. To hold otherwise results in dismissal of a plaintiff's complaint based on a technical omission that has no bearing on the above-mentioned purposes of the statute, namely, to ensure potential defendants can access a plaintiff's medical records and engage in settlement negotiations prior to litigation.

In striving to adjudicate cases on their merits, rather than technical deficiencies, the majority rightly remands this case for the Trial Court to ask the relevant question to all defendants: did you receive a signed HIPAA-compliant medical authorization? To do otherwise would result in dismissal of a case that very well may have merit based on nothing more than a technical filing omission, despite the purposes of the statute otherwise being fulfilled.

- 4 -

Even if I were to concede that the dissenting opinion is technically correct in its analysis, I also write separately to highlight my view that this situation, and the dissent's analysis of the situation, is ultimately due to fundamental flaws in our current framework. The current framework too often produces unjust outcomes that are unrelated either to the merits of the case or the goals of the health care liability statutory scheme.

Our Supreme Court has confirmed that the proper vehicle of challenging a plaintiff's compliance with the statute is a motion to dismiss, along with the burden-shifting framework. *Martin*, 600 S.W.3d at 334-35. Under the current framework, a plaintiff has the initial burden to demonstrate compliance. A plaintiff does this by attaching the medical authorizations to the complaint. If, as may be the circumstance in the present case, and was the circumstance in *Travis v. Cookeville Reg'l Med. Ctr.*, No. M2015-01989-COA-R3-CV, 2016 WL 5266554, at *7-9 (Tenn. Ct. App. Sept. 21, 2016) (affirming dismissal despite plaintiff's counsel's sworn affidavit that he provided defendants signed medical authorizations but failed to retain copies of the signed forms to document compliance), a plaintiff mails signed HIPAA-compliant medical authorizations to potential defendants but fails to retain copies to attach to his or her complaint, then plaintiff could never meet his or her initial burden and counsel's failure to keep signed copies all but guarantees dismissal, despite the statute's purpose being served, i.e. potential defendants receiving early access to plaintiff's medical records. In that scenario, we are left with dismissal due to a technical omission that is inconsistent with the statute's purposes and intent.

This flaw, in my view, arises from using a motion to dismiss to challenge a plaintiff's compliance. On the other hand, if the proper vehicle to challenge a plaintiff's compliance was a motion for summary judgment, then a plaintiff whose counsel failed to "practice good record keeping," *id.* at *7, could simply serve potential defendants with discovery such as requests for admission—asking, did you receive signed, HIPAA-compliant medical authorizations?

If we interpret Section 121(b), providing that a court "may require additional evidence of compliance," as meaning that a trial court may only require plaintiffs, rather than defendants, to produce such additional evidence, in light of our Supreme Court's burden-shifting framework, then it is my position that the framework needs to be reconsidered or revised to more fully comport with the purposes of the health care liability statutory scheme. If prejudice, whether a plaintiff's noncompliance with Section 121 "frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers," *Martin*, 600 S.W.3d at 334, tends to be the decisive consideration in these types of cases, should we really permit defendants to sit on their received HIPAA-compliant medical authorizations and enable them to avoid an adjudication on the merits merely because a plaintiff did not attach them to the complaint? Instead, we should strive to resolve health care liability disputes, as we do all other legal disputes, on their merits rather than on procedural technicalities which have no bearing on the purposes and intent of the health care liability statute. *See Henley v. Cobb*, 916 S.W.2d

915, 916 (Tenn. 1996) ("It is well settled that Tennessee law strongly favors the resolution of all disputes on their merits[.]").  To do otherwise is contrary to the purposes and intent of the statute as well as the clear policy of Tennessee to favor the resolution of all disputes on their merits.

Lastly, I want to address the dissent's position that if Plaintiff had filed "responsive affidavits or other documents, the trial court could have treated the motions as motions for summary judgment and provided the parties a 'reasonable opportunity to present all material made pertinent to such a motion.'"  Although this may be a good practice, I still believe Dr. Martin's counsel's admission opens the door sufficiently to allow the Trial Court to determine whether the other defendants received signed HIPAA-compliant medical authorizations, in accordance with Section 121(b).  Nevertheless, if the dissenting opinion is correct in its analysis, I would point out that the motion to dismiss, as the vehicle by which a defendant challenges a plaintiff's compliance, tends to stifle a plaintiff's ability to conduct discovery and present additional affidavits and evidence, given that a motion to dismiss considers only the face of the complaint.  In contrast, if the proper vehicle was a motion for summary judgment, the routine dismissals of health care liability cases based on nothing more than technical deficiencies, rather than the merits, would be minimized.  A motion for summary judgment would comport more faithfully to the purposes of the statutory scheme than a motion to dismiss because it would enable courts to more accurately determine the answer to the key question: whether the purposes of the statute were thwarted, resulting in the defendant's or defendants' prejudice.  Should the law of Tennessee really be that we prefer to adjudicate cases on their merits only if they are not health care liability cases?  I discern no valid reason to carve out a special exception for these types of cases from our preference to adjudicate cases on their merits.

In sum, I write to support the majority opinion's analysis and to highlight the problem I have noticed with the current procedure required by *Martin*, a Rule 12.02(6) motion to dismiss, by which our courts determine whether a health care liability plaintiff has complied with Section 121 or not.  Technical noncompliance often results in dismissal without consideration of the merits of the claim, despite the statutory purposes and intent having been met.  This often happens even though the defendants suffer no real prejudice.  Requiring a health care liability defendant to file a motion for summary judgment rather than a motion to dismiss would more easily allow all parties to submit "additional evidence of compliance to determine if the provisions of this section have been met."  Tenn. Code Ann. § 29-26-121(b).  This would be consistent with and support this statutory language allowing the trial court to seek such evidence.

_____
D. MICHAEL SWINEY, CHIEF JUDGE