FILED
05/15/2025
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
January 15, 2025 Session

## EMILY ELIZABETH BUCKNER v. COMPLETE WELLNESS CHIROPRACTIC CENTER ET AL.

**Appeal from the Circuit Court for Bradley County**
**No. V-23-376      J. Michael Sharp, Judge**

_____

**No. E2024-00698-COA-R3-CV**

_____

THOMAS R. FRIERSON, II, J., dissenting.

I respectfully dissent from the majority's reversal of the trial court's judgment dismissing Ms. Buckner's health care liability claims. Ms. Buckner failed to substantially comply with the requirements of Tennessee Code Annotated § 29-26-121(a)(2)(E) because she filed noncompliant medical authorizations and failed to meet her burden of demonstrating that the defendants were not prejudiced thereby.

As our Supreme Court explained in *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 331-32 (Tenn. 2020):

> Section 121(a)(2) defines the information—the content—that a plaintiff must include in the pre-suit notice:

> The notice shall include:

> > (A)    The full name and date of birth of the patient whose treatment is at issue;

> > (B)    The name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient;

> > (C)    The name and address of the attorney sending the notice, if applicable;

(D)     A list of the name[s] and address[es] of all providers being sent a notice; and

(E)     A HIPAA compliant medical authorization permitting the provider receiving the notice to obtain complete medical records from each other provider being sent a notice.

Tenn. Code Ann. § 29-26-121(a)(2); John A. Day, Med Mal Makeover 2009 Act Improves on '08: The New New Medical Malpractice Notice & Certificate of Good Faith Statutes, 45 Tenn. B.J. 14, 14-16 (July 2009) (discussing Section 121(a)(2) and the pre-suit notice content requirements). These statutory content requirements are directory and may be satisfied by substantial compliance. Stevens [ex rel. Stevens v. Hickman Cmty. Health Care Servs.], 418 S.W.3d [547,] 555 [(Tenn. 2013)] (evaluating whether a plaintiff substantially complied with Section 121(a)(2)(E)); see also Arden v. Kozawa, 466 S.W.3d 758, 762-64 (Tenn. 2015) (holding that the requirements of Section 121(a)(3)(B) and (a)(4) may be satisfied through substantial compliance); Thurmond [v. Mid-Cumberland Infectious Disease Consultants, PLC], 433 S.W.3d [512,] 520 [(Tenn. 2014)] (holding that the affidavit requirement of Section 121(a)(3)(B) and (a)(4) may be satisfied by substantial compliance).

This Court has explained the distinct but interdependent purposes Section 121 serves, stating that it "ensures that a plaintiff give[s] timely notice to a potential defendant of a health care liability claim so it can investigate the merits of the claim and pursue settlement negotiations before the start of the litigation." Runions [v. Jackson-Madison Cnty. Gen. Hosp.], 549 S.W.3d [77,] 86 [(Tenn. 2018)] (citing Foster v. Chiles, 467 S.W.3d 911, 915 (Tenn. 2015)). "Pre-suit notice benefits the parties by promoting early resolution of claims, which also serves the interest of judicial economy." Id. (citing Foster, 467 S.W.3d at 915). The first three content requirements of Section 121(a)(2) "facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney." Stevens, 418 S.W.3d at 554. The last two requirements "serve an investigatory function, equipping defendants with the actual means to evaluate the substantive merits of a plaintiff's claim by enabling early discovery of potential co-defendants and early access to a plaintiff's medical records." Id.

The Martin Court then explained that in order to ensure that a medical authorization is "HIPAA compliant," there are six "core" elements that must be present, the last of which is the inclusion of a "[s]ignature of the individual and date." See id. at 332 (quoting Stevens, 418 S.W.3d at 555-56; 45 C.F.R. § 164.508(c)(1)). As the Court elucidated, "omitting any

- 2 -

of these core elements may render a medical authorization noncompliant with HIPAA and ineffective 'to enable defendants to obtain and review a plaintiff's relevant medical records.'" *Id.*

Recognizing that this Court had struggled with the question of substantial compliance concerning the requirement of a HIPAA-compliant medical authorization, the *Martin* Court stated that it hoped to "clarify the role of prejudice in a court's determination of whether a plaintiff in a health care liability action has substantially complied with Section 121." *See Martin*, 600 S.W.3d at 333. The High Court thus explained that "prejudice is not a separate and independent analytical element" but rather is "a consideration relevant to determining whether a plaintiff has substantially complied" and "especially relevant to evaluating the extent and significance of the plaintiff's noncompliance." *Id.* Accordingly, the Court concluded that if the plaintiff's noncompliance with the statute "frustrates or interferes with the purposes of Section 121 or prevents the defendant from receiving a benefit Section 121 confers, then the plaintiff likely has not substantially complied with Section 121." *Id.* at 334.

The *Martin* Court also sought to clarify the burden-shifting analysis when compliance with Section 121 is challenged. *See id.* The Court correspondingly stated:

> By statute, a health care liability plaintiff bears the initial burden of establishing compliance with Section 121 by stating in the pleadings and providing "the documentation specified in subdivision (a)(2)," or of alleging "extraordinary cause" for any noncompliance. Tenn. Code Ann. § 29-26-121(b). A defendant wishing to challenge a plaintiff's compliance with Section 121(a)(2) must file a 12.02(6) motion to dismiss for failure to state a claim. The defense motion must describe "how the plaintiff has failed to comply with [Section 121] by referencing specific omissions," *id.*, and by explaining "the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance," *Stevens*, 418 S.W.3d at 556. A defendant may demonstrate that the noncompliance resulted in prejudice by explaining—for example—how the noncompliance frustrated or interfered with the purposes of Section 121 or deprived the defendant of a benefit Section 121 confers. <u>One means of satisfying this burden is by alleging that the plaintiff's Section 121(a)(2)(E) medical authorization lacks one or more of the six core elements required by federal law for HIPAA compliance.</u> Under federal law, a medical authorization is not HIPAA compliant if "[t]he authorization has not been filled out completely, with respect to" a core element. 45 C.F.R. § 164.508(b)(2)(ii). <u>Without a HIPAA compliant medical authorization, a defendant would ordinarily be deprived of a benefit Section 121 confers, as it declares that "[a]ll parties . . . shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice."</u>

- 3 -

Tenn. Code Ann. § 29-26-121(d)(1). Although defendants must explain how they were prejudiced by noncompliance, defendants need not "test" incomplete and facially noncompliant medical authorizations. As we recognized in *Stevens*, obtaining medical records with a HIPAA noncompliant medical authorization would violate federal regulations and could result in the imposition of severe penalties. *Stevens*, 418 S.W.3d at 565 n.6; *see also Woodruff ex rel. Cockrell v. Walker*, 542 S.W.3d 486, 499 (Tenn. Ct. App. 2017) ("Because the penalties imposed on entities that wrongfully disclose or obtain private health information in violation of HIPAA are severe, the sufficiency of the plaintiffs' medical authorizations is imperative."), *perm. app. denied* (Tenn. Oct. 6, 2017); *J.A.C. ex rel. Carter v. Methodist Healthcare Memphis Hosps.*, 542 S.W.3d 502, 514-15 (Tenn. Ct. App. 2016) (stating that a health care liability defendant has no duty to assist a plaintiff to achieve compliance with Section 121 or to test the validity of a medical authorization that is facially lacking a core element required for HIPAA compliance); *Dolman v. Donovan*, No. W2015-00392-COA-R3-CV, 2015 WL 9315565, at *5 (Tenn. Ct. App. Dec. 23, 2015) (rejecting the plaintiffs' argument that the medical providers could not have been prejudiced because they never attempted to obtain medical records with the deficient medical authorization provided), *perm. app. denied* (Tenn. May 6, 2016). As we emphasized in *Stevens*, plaintiffs, not defendants, are "responsible for complying with the requirements of [Section 121]." *Stevens*, 418 S.W.3d at 559.

Once a defendant files a motion that satisfies the foregoing prima facie showing, the plaintiff then bears the burden of establishing substantial compliance with Section 121, which includes the burden of demonstrating that the noncompliance did not prejudice the defense. *Rye* [*v. Women's Care Center of Memphis, MPLLC*], 477 S.W.3d [235,] 264-65 [(Tenn. 2015)]; *see also Moreno v. City of Clarksville*, 479 S.W.3d 795, 802 (Tenn. 2015) (citations omitted) (stating that once the City established a prima facie statute of limitations defense, the plaintiff bore the burden of establishing an exception to the defense); *Benton v. Snyder*, 825 S.W.2d 409, 414 (Tenn. 1992) (citations omitted) (same). The plaintiff "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or another means provided in Tennessee Rule 56, "set forth specific facts" demonstrating that the noncompliance did not prejudice the defense. *Rye*, 477 S.W.3d at 265. Defendants have no obligation to aid plaintiffs in meeting this burden, and defendants need not notify plaintiffs that a medical authorization lacks one or more of the six core elements federal law requires for HIPAA compliance. *See Stevens*, 418 S.W.3d at 559 (rejecting the argument that the defendant should have notified the plaintiff of the

- 4 -

noncompliance with Section 121 so that the plaintiff could have remedied the problem).

*Martin*, 600 S.W.3d at 334-35 (emphasis added) (footnotes and other internal citations omitted).

Applying this burden-shifting analysis to the facts in this case, I believe that the motions to dismiss were properly granted by the trial court. As the majority notes, although Ms. Buckner filed with her complaint "twenty separate affidavits claiming that pre-suit notice was sent" and attached to those affidavits "cop[ies] of 'the HIPAA-compliant medical authorization[s]'" that she had sent to each defendant, the "affidavits only included unsigned medical authorizations." The defendants responded by filing respective motions to dismiss, asserting that Ms. Buckner had failed to comply with Tennessee Code Annotated § 29-26-121(a)(2)(E) due to the lack of a signature on the medical authorizations. Ergo, the defendants satisfied their burden of demonstrating that Ms. Buckner's noncompliance resulted in prejudice by alleging that her Section 121(a)(2)(E) medical authorizations lacked "one or more of the six core elements required by federal law for HIPAA compliance." *See Martin*, 600 S.W.3d at 334 ("Without a HIPAA compliant medical authorization, a defendant would ordinarily be deprived of a benefit Section 121 confers, as it declares that '[a]ll parties . . . shall be entitled to obtain complete copies of the claimant's medical records from any other provider receiving notice.'" (citing Tenn. Code Ann. § 29-26-121(d)(1))).

At that point, the burden shifted to Ms. Buckner to establish "substantial compliance with Section 121, which includes the burden of demonstrating that the noncompliance did not prejudice the defense." *See Martin*, 600 S.W.3d at 335. "The plaintiff 'may not rest upon the mere allegations or denials of [its] pleading,' but must respond, and by affidavits or another means provided in Tennessee Rule 56, 'set forth specific facts' demonstrating that the noncompliance did not prejudice the defense." *Id.* (quoting *Rye*, 477 S.W.3d at 265). As the majority states in its Opinion, Ms. Buckner "did not respond by filing signed copies of the medical authorizations; rather she insisted that she complied with the statute despite the lack of proof in the record." The majority further notes that Ms. Buckner never offered any proof that "signed, HIPAA-compliant medical authorizations accompanied the pre-suit notice" she sent.

Instead, Ms. Buckner's response was to "assert[] that if the trial court wanted additional evidence of compliance . . . it could ask Practitioners to state that they received the signed authorizations." However, as the *Martin* Court elucidated, the defendants maintained "no obligation to aid plaintiffs in meeting this burden[.]" *See Martin*, 600 S.W.3d at 335. Ms. Buckner bore the sole burden to demonstrate that her noncompliance with Tennessee Code Annotated § 29-26-121(a)(2)(E) did not prejudice the defendants, and she was required to respond "by affidavits or another means provided in Tennessee Rule 56." *See id.* Indeed, had Ms. Buckner filed such responsive affidavits or other

documents, the trial court could have treated the motions as motions for summary judgment and provided the parties a "reasonable opportunity to present all material made pertinent to such a motion." *See id.* at 334 n.8; *see also* Tenn. R. Civ. P. 12.02.

However, because Ms. Buckner failed to file any additional documents to meet her burden and instead sought to "rest upon the mere allegations or denials of [her] pleading," I believe that the trial court properly granted the defendants' respective motions to dismiss. *See Martin*, 600 S.W.3d at 336 (holding that the plaintiffs had failed to demonstrate a lack of prejudice to the defendants regarding their noncompliant medical authorizations because the plaintiffs had "rested on the allegations and arguments in their pleadings"); *see also Elmore v. Mills*, No. E2023-01064-COA-R9-CV, 2025 WL 1012327, at *12 (Tenn. Ct. App. Mar. 31, 2025) (concluding that the plaintiff had failed to demonstrate a lack of prejudice to the defendants concerning his noncompliant medical authorizations, which lacked a signature and date, and refusing to remand for discovery because the plaintiff had failed to request that the trial court convert the motion to dismiss into a motion for summary judgment); *Travis v. Cookeville Reg'l Med. Ctr.*, No. M2015-01989-COA-R3-CV, 2016 WL 5266554, at *9 (Tenn. Ct. App. Sept. 21, 2016) (concluding that the plaintiff had failed to demonstrate substantial compliance with Section 121(a)(2)(E) because "the HIPAA form he proffered to the court was unsigned"). By reason of the foregoing, I would affirm the judgment of the trial court.


s/Thomas R. Frierson, II

_____

THOMAS R. FRIERSON, II, JUDGE